# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Khary E. and Eboni L. McClellan

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 08-33062

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case for Abuse Pursuant to 11 U.S.C. § 707(b)(1) and § 707(b)(3). (Doc. No. 138). At the conclusion of the Hearing, the Court took the matter under advisement, and also afforded the Debtors the opportunity to submit updated financial information. The Debtors have since submitted updated financial information to the Court. (Doc. No. 146). The United States Trustee did not file a timely response thereto. The Court has now had the opportunity to consider all of the evidence in this case, as well as the arguments made by the Parties. Based upon this review, the Court, for the reasons set forth herein, finds that the Motion of the United States Trustee should be Granted.

## FACTS

The Debtors, Khary and Eboni McClellan (hereinafter the "Debtors"), are married and have two young sons. The Debtors presently reside in the Chicago metropolitan area. On June 12, 2008, the Debtors filed a joint petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. (Doc. No. 1).

In the schedules submitted with their petition, the Debtors disclosed assets of $78,155.00 and liabilities of $324,782.65. The Debtors' liabilities consisted of: (1) $98,000.00 in secured debt, representing a house and two automobiles; (2) priority, unsecured debt of $12,000.00, arising from past due income tax liabilities; and (3) $214,782.65 in general, unsecured debt. It was disclosed that the

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

largest of the Debtors' general, unsecured debts was a student-loan obligation, incurred largely by Mrs. McClellan, in the amount of $171,014.00. The remainder of the Debtors' general, unsecured debts were in the nature of consumer credit, including a large number of outstanding credit-card obligations and unpaid cash advances.

During the progression of their Chapter 13 case, the Debtors amended their bankruptcy schedules. (Doc No. 53). Therein, the Debtors made the following representations:

The Debtor, Mr. Khary McClellan, has been employed with the Ford Motor Company for ten years. With the Ford Motor Company, Mr. McClellan reported having a gross monthly income of $4,904.57, or $58,854.84 annually. From his salary, Mr. McClellan reported monthly deductions of $1,325,32, including $175.18 for the repayment of a 401(k) loan, leaving him $3,579.25 in net pay.

The Debtor, Mrs. Eboni McClellan, works as a teacher for the Chicago Public Schools, a position she recently obtained. As a teacher, Mrs. McClellan reported having a gross monthly income of $4,288.18, or $51,458.16 per year. From her salary, Mrs. McClellan set forth monthly deductions of $1,245.58, leaving her $3,042.60 in net pay.

Based upon their net monthly pay, the Debtors reported a combined average monthly income of $6,621.85. Against this income, the Debtors claimed $4,614.70 in necessary, monthly expenses, leaving the Debtors $2,007.15 in monthly disposable income to pay toward a Chapter 13 plan of reorganization. Among their monthly expenses, the Debtors made these itemizations:

| | |
|---|---|
| Mortgage/Rent | $1,000.00 |
| Food | $ 875.00 |
| Cable/Internet | $ 200.00 |
| Clothing | $ 200.00 |
| Medical/Dental | $ 150.00 |
| Cell Phones | $ 140.00 |

Page 2

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

|  |  |
|---|---|
| Transportation, excluding debt payment | $ 550.00 |
| Auto Insurance | $ 470.00 |
| Auto Maintenance | $ 100.00 |

Approximately one year after filing their Chapter 13 case, the Debtors filed a motion to covert their case to one under Chapter 7 of the Code. (Doc. No. 98). On May 7, 2009, the Court entered an order converting the Debtors' case. (Doc. No. 100). Pursuant to § 1326(a)(2), the sum of $7,350.00 was thereafter returned to the Debtors, representing the payments made by the Debtors to the Chapter 13 Trustee. (Doc. No. 121).

As required by the Court's order of conversion, the Debtors submitted updated bankruptcy schedules. (Doc. No. 122). In these schedules, the Debtors did not make any adjustments to their income and deductions therefrom. The Debtors, however, did make an upward adjustment in their household expenditures, claiming $6,583.00 in necessary, monthly expenses, leaving the Debtors just $38.85 in monthly disposable income. Included among the Debtors' revised monthly expenditures were the following modifications:

|  |  |
|---|---|
| Food | $1,200.00 (increase of $325.00) |
| Telephone | $ 150.00 (increase of $150.00) |
| Cable/Internet | $ 250.00 (increase of $50.00) |
| Clothing | $ 225.00 (increase of $25.00) |
| Medical/Dental | $ 300.00 (increase of $150.00) |
| Cell Phones | $ 180.00 (increase of $40.00) |
| Transportation, excluding debt payment | $ 700.00 (increase of $150.00) |
| Auto Maintenance | $ 200.00 (increase of $100.00) |

The Debtors also continued to claim the same necessary, monthly expenditures for their mortgage/rent, $1,000.00, and their auto insurance, $470.00. In addition, in their updated bankruptcy

Page 3

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

schedules, the Debtors added a monthly expense of $250.00 to service their student loans as well as a $300.00 expense for an anticipated auto payment.

Later, the Debtors, as permitted by the Court at the conclusion of the Hearing held on dismissal, again submitted to the Court revised financial figures. (Doc. No 146). For their revised financial information, the Debtors once more set forth a net monthly income of $6,621.85, but made this caveat:

> Mrs. [McClellan] has been out of work on Medical leave since the beginning of August. No Income at all. Will be reevaluated by her doctor. Also, on October 9, 2009 due to Illinois Certification, [s]he may no longer be employed.

For their expenses, the revised financial information submitted by the Debtors claimed $6,783.00 in necessary, monthly expenditures, leaving the Debtors a shortfall in their household budget of $161.15.

## DISCUSSION

This matter is before the Court on the Motion of the United States Trustee to Dismiss. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter final orders in this matter. 28 U.S.C. § 157(b)(1).

The Motion of the United States Trustee (hereinafter the "UST") to Dismiss is predicated upon 11 U.S.C. § 707(b)(1) and § 707(b)(3). These provisions operate together, allowing a court to dismiss a debtor's bankruptcy case when the particular circumstances of the filing of the case demonstrate abuse. In relevant part, these provisions provide:

> (b)(1) After notice and a hearing, the court . . . may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts

Page 4

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

> . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> > (A) whether the debtor filed the petition in bad faith; or
> >
> > (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

Under this statutory framework, it may thus be said that § 707(b)(1) and § 707(b)(3) operate in a hierarchical fashion, with § 707(b)(1) first setting forth the foundational requirement, providing for the dismissal of case when abuse is found to exist, and § 707(b)(3) then providing a methodology by which to assess the existence of abuse under § 707(b)(1).

In accordance with the two subparagraphs of § 707(b)(3), a finding of abuse, warranting the dismissal of a debtor's case under § 707(b)(1), may be predicated upon either (1) bad faith or (2) the totality of the circumstances. As the movant, the UST bears the burden to establish that the dismissal of a debtor's case is warranted under these grounds. *In re Durczynski*, 405 B.R. 880, 883 (Bankr. N.D.Ohio 2009). For its burden, the UST set forth that the basis for its Motion to Dismiss is that "the Debtors have the ability to repay a portion of their debts." (Doc. No. 133, at pg. 1).

It has long been a policy goal of bankruptcy law to afford a debtor a fresh-start. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). At the same time, a fresh-start does not mean that a debtor should be afforded a head-start. It has, thus, also been a policy goal of bankruptcy law to encourage debtors to repay their debts when they have the ability to do so. In furtherance of this latter policy aim, it is well-established that a prime and often dispositive consideration regarding the dismissal of a case for abuse under § 707(b)(3) will center on the point

Page 5

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

made by the UST: Whether a debtor has the ability to repay their debts out of future income? *In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989).

This assessment, regarding a debtor's ability to repay their debts, is normally ascertained by reference to the amount of "disposable income" the debtor has available, and whether that income could adequately fund a Chapter 13 plan. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id.*, *citing* 11 U.S.C. § 1325(b)(2). For this definition, the reasonable necessity of an expense is determined by first looking to whether the expenditure serves a valid household purpose, and if it does, whether the amount of the expenditure is appropriate. *In re Bien*, 95 B.R. 281, 282 (Bankr. D.Conn.1989).

Set within this framework, two of the Debtors' claimed expenditures are normally disallowed as a matter of course as unnecessary expenses. The first is Mr. McClellan's deduction of $175.18 to repay a 401(k) loan. While not adopting an absolute prohibition on the practice, this Court has generally not permitted debtors to deduct against their 'disposable income' allocations made for retirement savings – *e.g.*, contributions or loan repayments made to 401(k) plans, IRAs or other like accounts. In *In re Blankenship*, this Court observed: "it would be unfair to allow a debtor to commit a part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend." 398 B.R. 457, 461 (Bankr. N.D.Ohio 2008), *citing Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775 (6th Cir.1995) and *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434-35 (6th Cir. 2004).

In this matter, no special circumstances have been presented which would warrant a deviation from this general approach. For example, a deduction for retirement savings may be found appropriate, as a reasonably necessary expense, if a debtor is at or near retirement age and has minimal savings for

Page 6

**In re: Khary E. and Eboni L. McClellan**
**Case No. 08-33062**

retirement. *In re Blankenship*, 398 B.R. at 461-62. Contrary to this, however, both of the Debtors are still relatively young, and thus have ample time to accumulate additional resources for retirement.

The same is also true of the $250.00 student-loan payment claimed by the Debtors. Student-loan obligations, although nondischargeable debts, are not entitled to preferential treatment under the Bankruptcy Code. *See* 11 U.S.C. § 507 (listing priority debts). Thus, like with retirement accounts, this Court, when considering if a case should be dismissed for abuse, has generally not permitted debtors to allocate their financial resources to repay student-loan obligations at the expense of their other creditors. In the case of *In re Kaminski*, the Court explained:

> in the context of a § 707(b)(3) action, this Court has not viewed favorably debtors who seek to allocate their financial resources to fully pay a student loan while not doing the same for their other unsecured creditors. The reason: it goes against the core principle of bankruptcy that similarly situated creditors are entitled to an equal distribution of estate assets. The Debtors' position, that payments on student-loan obligations are entitled to special treatment because, being nondischargeable debts, they are not voluntary has been rejected by the Court.
>
> The fact . . . that an obligation to pay a debt will survive bankruptcy, does not, on that basis alone, mean that a debtor has the right to treat the claim differently. Otherwise, all nondischargeable debts would be entitled to favorable treatment, including those debts which arise from a debtor's wrongful conduct – *e.g.*, fraud, embezzlement and larceny.

387 B.R. 190, 197 (Bankr. N.D.Ohio 2008) (internal citations and quotation omitted). While Mrs. McClellan has a particularly large amount of student-loan debt, no justification was offered as to why this obligation should be accorded priority over the Debtors' other unsecured creditors.

Accordingly, in this § 707(b)(3) analysis, neither Mr. McClellan's $175.18 allotment to a 401(k) account, nor the Debtors' $250.00 allocation to repay outstanding student loans will be permitted as permissible charges against 'disposable income.' Other expenditures claimed by the Debtors also require closer scrutiny.

Page 7

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

It is fundamental that an assessment as to the amount of 'disposable income' available to a debtor is made exclusively by the court, and is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007). For this assessment, a court can rely on its own judgment to identify excessive expenses and can draw on its own experience generally or specifically within the geographic area where the debtor resides. *In re Voelkel*, 322 B.R. 138, 147 (9th Cir. B.A.P. 2005). While this may be viewed as intrusive, because it necessarily involves a subjective evaluation of lifestyle choices made by a debtor, it is a necessary facet of a § 707(b)(3) analysis, and one in which a debtor implicitly invites when, by filing a petition in bankruptcy, they invoke the equitable jurisdiction of the court. *Accord In re Fauntleroy*, 311 B.R. 730, 736 (Bankr. E.D.N.C. 2004).

In the past, this Court has been guided by a number of parameters when assessing the reasonable necessity of expenses claimed by a debtor in their monthly budget. At the lower end, bankruptcy law does not require that a debtor live a monastic lifestyle; nor is a debtor expected to live in poverty to pass scrutiny in an action brought to dismiss under § 707(b)(3). *In re Felske*, 385 B.R. 649 (Bankr. N.D.Ohio 2008); *see also In re Fulbright*, 319 B.R. 650, 658 (Bankr. D.Mont. 2005). At the same time, a Chapter 7 discharge was never meant to be a device for debtors to utilize to pass onto their creditors the costs incurred for the purchase of unnecessary goods and services. *In re Brenneman*, 397 B.R. 866 (Bankr. N.D.Ohio 2008); *see also In re Castellaw*, 401 B.R. 223, 229 (Bankr. N.D.Tex. 2009). Debtors, therefore, are expected to do some financial belt tightening and may be required to forgo amenities to which they had been accustomed. *In re Krohn*, 886 F.2d 123, 128 (6th Cir. 1989).

Utilizing as a baseline the financial figures the Debtors submitted shortly after converting their case to Chapter 7, a number of the expenditures set forth by the Debtors do not exhibit the requisite degree of belt tightening. First, the Debtors' allocation of $700.00 per month in the category of "Transportation, excluding debt payment," seems excessive for what is largely an expense for gas and perhaps smaller charges for items such as tolls. To illustrate, assuming gas is $3.00 per gallon, $600.00

Page 8

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

would purchase 200 gallons of gas which, if used in vehicles obtaining 25 miles to the gallon, would allow for 5,000 miles of driving per month. It is noted in this regard that neither of the Debtors are required, as a part of their employment, to frequently travel.

The Court also takes strong issue with these three related categories of expenditures: (1) $150.00 for telephone; (2) $250.00 for cable/internet; and (3) $180.00 for cell phones. As a matter of policy, the Debtors' creditors should not have to pay almost $600.00 per month to provide them with multiple phones and viewing options for their television and computer. Put simply, for these categories of expenses, costs incurred by a debtor, beyond that required to obtain more than a basic level of service, will not be considered reasonably necessary unless there is a remunerative basis. *U.S. Trustee for W. Dist. of Virginia v. Harrelson*, 323 B.R. 176, 180 (W.D.Va. 2005).

In addition to the above expenditures, the Debtors also appear to have over inflated their necessary, monthly costs for other items. Standing out, a monthly expense of $1,200.00 for food and $225.00 for clothing strikes this Court as excessive for a family with two young children. *See In re Durczynski*, 405 B.R. 880 (Bankr. N.D.Ohio 2009) ($1,150,00 per month for food for a family of five moderately excessive). The same is also true, at least in the absence of supporting documentation, which was not provided, of the Debtors' claim of a $470.00 monthly expense for auto insurance.

The Court also questions the accuracy of the financial figures presented by the Debtors. During the progression of their case, the Debtors repeatedly amended their financial figures. Particularly telling, after the Debtors filed for Chapter 13 relief, they had ample 'disposable income' to fund a Chapter 13 plan. Such 'disposable income,' however, fell precipitously at or around the time the Debtors converted their case to Chapter 7,[1] a chapter under which it is often beneficial for a debtor to show a minimal level

---

[1] Bankruptcy law imposes upon debtors a continual duty of disclosure. *Lewis v. Weyerhaeuser Co.*, 141 Fed.Appx. 420, 424 (6th Cir. 2005). It, thus, can be presumed that the changes to the Debtors' expenses occurred or were discovered during the time immediately surrounding the conversion of

Page 9

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

of 'disposable income.' 11 U.S.C. § 707(b). In terms of specific numbers, the Debtors' level of 'disposable income' – not because of a change in income, but solely because of changes made to their itemized expenses – fell from $2,007.15 to just $38.85. This decline in their 'disposable income' then continued further, with the Debtors showing a shortfall of $161.15 in their household budget by the time of the Hearing held on the UST's Motion to Dismiss.

Such a decline is strongly indicative of one manipulating their financial figures to suit the needs of the situation. It also raises a more fundamental matter. There is no reason to suppose, and no evidence exists, that the Debtors were unable to adequately support themselves and their children based upon those budgetary figures they submitted during their Chapter 13 case wherein the Debtors' claimed 'disposable income' of $2,007.15. In this regard, the following monthly expenses, as first claimed by the Debtors, seem more than adequate: (1) Mortgage/Rent, $1,000.00; (2) Food $875.00; (3) Clothing, $200.00; and (4) Transportation, excluding debt payment, $550.00.

This conclusion is further reinforced by the fact that some of those expenses first claimed by the Debtors lack any indication of frugality. For example, the Debtors have at all times claimed the rather steep figure of $470.00 as a necessary, monthly expenditure for auto insurance. Likewise, the original financial figures provided by the Debtors set forth a total monthly expense of $340.00 for phone, internet and cable services – with such an amount again being beyond that needed to obtain basic services.

Placed within this entire context, it can only be concluded that the Debtors, by making adjustments to their monthly expenses, have the ability to reallocate a meaningful level of their financial resources so as to benefit their unsecured creditors. Consequently, on the basis of an ability to pay, the

_____

the Debtors' case.

Page 10

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

UST has sustained its burden of going forward with evidence that dismissal of the Debtors' case is warranted under § 707(b)(3).

In rebuttal, the Debtors raised what can be construed as one main point: Because of health and job security issues, there exists no certainty, on a forward going basis, that they will continue to have the same level of financial resources available. In support of this position, the Debtors called attention to a couple of facets surrounding their personal lives.

To begin with, evidence was offered that Mrs. McClellan has been temporarily unemployed because of recent surgery to her knee. Also, even when her recovery is complete, it was related to the Court that Mrs. McClellan, because of a certification issue, may be ineligible to regain her former position as a teacher. Regarding Mr. McClellan, evidence was offered that he presently has some health issues, although they are not debilitating, and that he has seen intermittent declines in his salary because of a decrease in the number of working hours available through his employer, the Ford Motor Company. The Court also recognizes, as common knowledge, that the Mr. McClellan's job, as an auto worker, is not secure.

All the same, the Court is not receptive to the argument that the possibility of a future downturn in one's economic affairs should operate to insulate debtors, with the ability to pay their debts, from the reach of § 707(b)(3). *In re Durczynski*, 405 B.R. at 885. This is especially true for debtors, such as those in this case, who earn well in excessive of $100,000.00 annually, an amount well above the norm. Once more, if such a downturn in the Debtors' economic affairs should come to pass, the Bankruptcy Code affords the Debtors ample remedial measures. For example, if the Debtors' case is dismissed, nothing prevents them from later seeking bankruptcy relief under Chapter 7. Similarly, if the Debtors were again to decide to pursue relief within the context of a Chapter 13, they are still afforded with the ability to later seek the conversion of their case to one under Chapter 7, to modify their plan, or to seek a hardship discharge of their debts. See 11 U.S.C. §§ 1307(a), 1328(b) & 1329(a).

Page 11

In re: Khary E. and Eboni L. McClellan
Case No. 08-33062

In conclusion, the Court, based upon the facts before it, finds that the Debtors have the ability to make a meaningful remuneration toward their unsecured debts. As such, with no compelling circumstances indicating to the contrary, the Court holds that, pursuant to the standards set forth in 11 U.S.C. § 707(b)(3), granting relief to the Debtors would be an abuse for purposes of 11 U.S.C. § 707(b)(1). In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, November 16, 2009, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: October 30, 2009

/S/ RICHARD L. SPEER
---
Richard L. Speer
United States
Bankruptcy Judge

Page 12

# *CERTIFICATE OF SERVICE*

Copies were mailed this 30th day of October, 2009, to the following parties:

Eboni L McClellan
Khary E McClellan, Sr.
7734 S Cornell Ave, #3
Chicago, IL 60649

Gordon R Barry
930 Spitzer Bldg
Toledo, OH 43604

Louis J Yoppolo
1200 Edison Plaza
300 Madison Ave
Toledo, OH 43604

Office of the U.S. Trustee
c/o Linda Maria Battisti
201 Superior Ave, E, #441
Cleveland, OH 44114

/s/ Robert C.W. Birmingham
Deputy Clerk, U.S. Bankruptcy Court